## John Doherty, Defendant in Error, v. The Parker-Washington Company, Plaintiff in Error.

## Gen. No. 14,279.

1. MASTER AND SERVANT—*who may be vice-principal.* A superior servant or vice-principal may be a fellow-servant; one of two servants in equal station or authority may be vice-principal, and, furthermore, though it may rarely occur, no principle of law prohibits a subordinate employe being made a vice-principal for a particular purpose or a particular occasion. The question is one to be resolved by a consideration of the facts and circumstances in evidence.

2. MASTER AND SERVANT—*how question of fellow-servants determined.* The question of fellow-servantship when raised cannot always be disposed of by ascertaining what was generally the position of the person in a given case contended to be a fellow-servant. In a case of contradictory and conflicting testimony, in respect to the facts upon which the question must be determined then the question is always one of fact to be determined, when there is a trial by a jury, upon proper instructions as to what constitutes the relation of fellow-servants or the position of vice-principal. But in case of no conflict of evidence in respect to the facts upon which the question is to be determined, then the question is always one of law to be settled by the court, whether the trial is one by jury or not.

3. MASTER AND SERVANT—*how question of liability determined, where servant whose negligence is in question, occupied dual position.* When a particular employe occupies a dual position of fellow-servant and vice-principal, then it is to be ascertained whether the negligent act complained of arose out of or was the direct result of the exercise of the authority conferred upon him by the master over his co-laborer, and if it occurred in the exercise of such authority, then the master is liable for the negligence; otherwise not. The master is liable also where the injury results from the negligence of the vice-principal as such in combination with the negligence of such vice-principal in his capacity of fellow-servant, provided, however, that his negligence in the capacity of vice-principal is then such that the injury would not have happened but for that negligence.

Action in case for personal injuries. Error to the Municipal Court of Chicago; the Hon. FREEMAN K. BLAKE, Judge presiding. Heard in this court at the March term, 1908. Affirmed. Opinion filed January 8, 1909.

CHARLES L. MAHONY and HOLMES CONRAD, JR., for plaintiff in error.

JOHN C. KING and JAMES D. POWER, for defendant in error.

MR. JUSTICE CHYTRAUS delivered the opinion of the court.

The Parker-Washington Company sued out this writ of error to reverse a judgment for $546.66 obtained against it by John Doherty, the defendant in error. Doherty obtained the judgment in an action on the case for personal injuries he sustained May 7, 1907, while in the employ of plaintiff in error. The injuries are contended to have been occasioned by the negligent conduct of one Wellington H. Hixon, a vice-principal.

Plaintiff in error was constructing a tunnel under the streets of Chicago near 73rd street and Drexel avenue. In the prosecution of the work of such construction an elevator brought from the tunnel up to the surface of the ground small cars through a shaft. These small cars came up filled with rock and loose earth which, at the surface, was emptied into larger or "dump" cars. These "dump" cars ran upon a track and carried the load to a dump where the car was emptied. The dump cars were about 6x8 feet and operated on a pivot or swivel running from front to rear, so that they could be "dumped" or emptied toward either side. Upon each side of the cars were two chains so placed and arranged that when the chains on one side were released the car would "dump" toward the other side. Doherty, when injured, was assisting in loading dump cars at the mouth of the shaft, running them out on the dump and there emptying them. The injury occurred about midnight of the second day of Doherty's employment. With him at the time was Hixon.

The track ran north and south and Doherty was on

the east side and Hixon on the west side of the car which was dumped when Doherty was hurt. He was hurt by the carload of rock and loose dirt being dumped upon him. There is a square conflict in the testimony whether foreman Olson made the statements and as to all the facts upon which is predicated the conclusion that Hixon, at the time in question, acted as vice-principal and, also, in respect to the directions to Doherty by Hixon and the latter's acts when the chains upon the car in question were released and the car dumped. Upon both these propositions we must, however, abide by the verdict of the jury, for, upon the state of the evidence in this record, we are not warranted in assuming to substitute our judgment for that of the jury and that is what we would have to do in order to reverse this judgment.

Taking such view of the evidence as we find to be most favorable to Doherty there is sufficient evidence to sustain a verdict and judgment in his favor. He was a new hand at work of this kind. Hixon testified that he, himself, had charge of the top work, or had charge of the cars on top, and had had charge thereof since December 1906. Doherty says he was a laborer and was hired to dig in the tunnel but, as he did not have his long boots with him on this occasion, the foreman, Olson, told him to go and help Hixon on top and he, Hixon, would show him what to do. Olson, Doherty says, also told Hixon to show him what to do. Hixon tells us that on the trip Doherty was injured the dump car had advanced about fifty or sixty feet, but had not reached the place where it was to be taken, when the front wheels ran off the track. At that time Doherty was ahead with a lantern but came back with it and put it down on the ground. He, Doherty, was then on the east side of the car and Hixon was on its west side. The car was leaning somewhat toward the east side, thereby straining and tightening the chains on the west side, and Hixon told Doherty to put his shoulder under his side and "raise it like over to him."

which Doherty did. Hixon then unloosened the two chains on the west side of the car, where he was, and then, as put by Doherty, "the car came over right on top of me." As a matter of fact the stones and earth fell upon him, broke his left leg and otherwise injured him. Customarily both men would be on the same side, one at each chain, and unloosen the chains to dump the car. Doherty would unloosen his chain when Hixon told him to do so. Hixon informs us that on this occasion, when the car "jumped the track," he prepared to dump the car where it was.

It may fairly be said that when Olson, the foreman, told Doherty to go and help Hixon, who had charge of the cars, and that Hixon would show him what to do, Doherty was placed under Hixon's orders. This conclusion is more peculiarly forced upon our mind in view of the fact of Doherty's newness at the work. The master made Hixon both the superior and the instructor of Doherty. When the latter in compliance with the former's direction put his shoulder under the side of the car it was not merely a co-operation in service, but it was in the fullest sense an obedience of an order given by one whom the master had substituted in his own place and stead—a vice-principal. True there is great conflict in the evidence and practically all the testimony that is of vital importance, upon this issue of vice-principalship, is in conflict and it is here in truth a delicate matter to say that the defendant in error has a preponderance. But that question has been passed upon by the jury and by the learned trial judge favorably to the defendant in error. We cannot disturb their conclusion.

A superior servant or vice-principal may be a fellow-servant; one of two servants in equal station or authority may be vice-principal and, furthermore, though it may rarely occur, no principle of law prohibits a subordinate employé being made a vice-principal for a particular purpose or a particular occasion. The relative general position of the employes con-

cerned, when the question is involved, is, frequently, but a circumstance of greater or less weight in arriving at a conclusion.   When an issue arises whether an employe on a particular occasion was a vice-principal it must be determined by the facts and circumstances of the occasion.   The question of fellow-servantship, when raised, cannot always be disposed of by ascertaining what was, generally, the position of the person in the given case contended to be a fellow-servant.   In a case of contradictory and conflicting testimony, in respect to the facts upon which the question must be determined, then the question is always one of fact to be determined, when there is a trial by a jury, upon proper instructions as to what constitutes the relation of fellow-servant or the position of vice-principal.   But in case of no conflict of evidence in respect to the facts upon which the question is to be determined, then the question is always one of law to be settled by the court whether the trial is one by jury or not.

When a particular employe occupies the dual position of fellow-servant and vice-principal then it is to be ascertained whether the negligent act complained of arose out of and was the direct result of the exertion of the authority conferred upon him by the master, over his co-laborer, and if it occurred in the exercise of such authority then the master is liable for the negligence, otherwise not.   The master is liable, also, where the injury results from the negligence of the vice-principal, as such, in combination with the negligence of such vice-principal in his capacity of fellow-servant provided, however, that his negligence in the capacity of vice-principal is then such that the injury would not have happened but for that negligence.   Gall v. Beckstein, 173 Ill. 187; Norton Bros. v. Nadebok, 190 Ill. 595; Roebling Const. Co. v. Thompson, 229 Ill. 42.

Herein the negligence of Hixon in directing Doherty to put his shoulder under the east side of the car,

where Doherty was, and then, while Doherty had his shoulder under that side, loosening both the chains on the west side of the car, occasioned the injury. The jury determined that in giving such direction and while he thereupon loosened the chains Hixon acted as vice-principal.

The judgment of the trial court must be and it is affirmed.

*Affirmed.*